IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01060-RM-KLM

LAMBLAND, INC., a Colorado Corporation doing business as A-1 Organics, Inc.,

     Plaintiff,

v.

HEARTLAND BIOGAS, LLC, a Delaware limited liability company,

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Nonparty Board of County Commissioners of Weld County's ("BOCC") **Motion for Shifting of Fees and Costs** [#69][1] (the "Motion"). Defendant filed a Response [#76] in opposition to the Motion, and the BOCC filed a Reply [#78] and a Notice of Supplementation of the Motion [#87] (the "Notice"). The Court has reviewed the Motion, the Response, the Reply, the Notice, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#69] is **GRANTED in part and DENIED in part**.

## I. Background

     Plaintiff brings this diversity action based on a claim of breach of contract by Defendant. *See generally Second Am. Compl.* [#102]. In the present Motion [#69],

_____

[1] "[#69]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

Nonparty BOCC seeks to shift attorney's fees and costs of production to Defendant in connection with the BOCC's compliance with Defendant's Subpoena [#27-5] (the "Subpoena"). *See Motion* [#69].

Defendant here was also the sole plaintiff in Civil Action No. 16-cv-03183-RM-NYW, *Heartland Biogas, LLC v. The Board of County Commissioners of Weld County* ("*Heartland v. BOCC*"). *Order* [#59] at 2. In that case, Defendant first sued the BOCC, the Colorado Department of Agriculture ("CDA"), the Colorado Department of Public Health and Environment ("CDPHE"), and four employees of CDPHE before dismissing claims against CDA and CDPHE and filing an action against those same entities in Denver County District Court (the "State Court Action"). *Id.* (citations omitted). The remaining parties in *Heartland v. BOCC* then exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), wherein the BOCC produced more than 2,600 pages of documents. *Id.* On December 4, 2018, Defendant voluntarily dismissed the federal case.

Meanwhile, in the State Court Action, Defendant served the BOCC with a Subpoena to Produce Documents on June 20, 2018. *BOCC's Ex. D* [#27-4]. The BOCC objected to the subpoena, arguing that Defendant sought "duplicative information that would impose an undue burden on BOCC wholly disproportionate to the needs of the State Court Action and that would be burdensome and oppressive to the BOCC." *Order* [#59] at 3. The presiding judge overruled the BOCC's objections and ordered it to comply. *BOCC's Ex. H* [#27-8]. Instead, the BOCC requested that Defendant pay the estimated cost in advance of production pursuant to the Colorado Open Records Act, Colo. Rev. Stat. § 24–72–205(1)(b) ("CORA") and Colo. R. Civ. P. 26. *See BOCC's Ex. I* [#27-9]; *see BOCC's Ex. J* [#27-9]. Defendant refused to pay those costs, and the BOCC refused to

produce any documents.  *Id.*  Ultimately, the BOCC's second motion to quash was mooted by the court when the BOCC was added as a defendant in the State Court Action. *Response* [#78] at 8.  The BOCC subsequently filed a motion to dismiss, which the court denied. *Second Motion for Protective Order* [#115] at 7.  The most current information the Court has from the parties is that, at least as of November 5, 2019, discovery in the State Court Action is stayed because the BOCC filed an interlocutory appeal pursuant to Colo. Rev. Stat. § 24–10–108.  *Id.* at 10-11.

In the instant case, Defendant served the BOCC with a Subpoena to Produce Documents [#27-5] (the "Subpoena") on August 7, 2018.  The BOCC filed a Motion to Quash Defendant's Subpoena to Produce [#27] (the "Motion to Quash") on August 24, 2018, and requested that the Court enter a protective order, quash the Subpoena, and shift costs related to the BOCC's compliance with the Subpoena to Defendant because "[d]oing so is the only way to protect the BOCC from being subjected to the undue burden and costs associated with providing unnecessary and duplicative response to a burdensome and oppressive subpoena . . . ."  [#27] at 12-13.

On November 29, 2018, the Court entered an Order [#59] which denied in part and denied without prejudice in part the BOCC's Motion to Quash [#27].  The Court found that the BOCC had not "satisfied its burden of showing that the Subpoena is unduly burdensome" and denied the request to quash the Subpoena. *Order* [#59] at 10.  Next, the Court denied without prejudice the BOCC's request for a protective order because it had failed to show that "it will suffer a serious injury in the absence of a protective order covering the subpoenaed materials." *Id.* at 11.  Finally, the Court denied without prejudice the BOCC's request to shift the cost of production because it was unclear whether the

BOCC's estimate was accurate and because it made more sense to determine the issue of seeking cost-shifting "once an actual cost of production was determined rather than a mere estimate." *Order* [#59] at 12. At that time, the BOCC estimated the cost of compliance to be $8,350.20, totaling $4,545.00 in time costs and $3,805.20 in technology costs. *Id.* at 12.

On January 10, 2019, the BOCC began a rolling production to Defendant of "almost 35,000 pages of documents and communications, while at the same time raising and preserving various objections to each of the categories of documents and communications sought." *Motion* [#69] at 2 (citations omitted). On January 31, 2019, the BOCC began its second rolling production to Defendant of "more than 31,000 pages of additional documents and communications along with the BOCC's Initial Privilege Log" and noted that "a supplemental log would be forthcoming on or before February 21, 2019." *Id.* (citation omitted). Finally, on March 8, 2019, the BOCC submitted to Defendant the "full, 210-page version of its First Supplemental Privilege Log . . . ." *Id.* at 3.

On March 12, 2019, four days after it produced the First Supplemental Privilege Log, the BOCC filed the instant Motion seeking "the shifting of fees and costs so incurred in at least the amount of $84,896.31." [#69] at 1. The BOCC asserts that "the internal cost [it] incurred in generating a Response to the Subpoena to Produce . . . is $18,556.31" which includes "$15,496.31 attributable to the cost of hosting and uploading the massive volume of potentially responsive material with a third-party vendor . . . ." *Id.* at 3-4 (citation omitted). Further, the BOCC claims that "the external cost [] incurred . . . in terms of being billed the reasonable and customary fees of Hall & Evans, L.L.C. to perform a reasonably necessary second round of review for responsiveness and privilege, and for generation of

the BOCC's voluminous Privilege Log in this matter, is $66,340.00."  *Id.* at 4.

On May 23, 2019, the BOCC filed its Notice requesting additional external attorney's fees.  [#87] at 2.  However, the BOCC fails to state the precise amount it claims in the Notice, although it attaches a bill for an additional $20,616.50 in external attorney's fees, which it is presumably seeking in full.  *Billing Records* [#87-2] at 38.  Thus, in short, the BOCC seeks to shift a total of $86,956.50 in external attorney's fees consisting of $66,340.00 from the Motion [#69] and $20,616.50 from the Notice [#87], in addition to $18,556.31 in internal and third-party vendor costs, for a total of $105,512.81 in attorney's fees and costs.  The BOCC requests that the Court shifts these fees and costs in an amount appropriate under the circumstances pursuant to Fed. R. Civ. P. 45.  *Motion* [#69].

## II.  Legal Standard

Fed. R. Civ. P. 45 governs the issuance of subpoenas to non-parties and provides that the serving party "may, at any time, move the issuing court for an order compelling production or inspection," but the order "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45 (c)(2)(B).  If the cost of compliance is significant, courts "must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'"  *Linder v. Calero–Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).  However, this does not necessarily mean that the requesting party must bear the entire cost of compliance.  *Id.* (citation omitted).

To determine whether, and to what extent, attorney's fees and costs should be shifted from a nonparty responding to a subpoena to the party seeking discovery, courts generally examine the following factors: (1) whether the nonparty actually has an interest

-5-

in the outcome of the case; (2) whether the nonparty can more readily bear the expense than the requesting party; (3) whether the litigation is of public importance; (4) the scope of discovery and the extent to which the nonparty was required to separate responsive information from privileged or irrelevant material; and (5) the reasonableness of attorney's fees and costs of production incurred. *In re Application of Michael Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-KMT, 2012 WL 1901217, at *4 (D. Colo. May 24, 2012), *aff'd*, 520 F. App'x 736 (10th Cir. 2013); *see also Crandall v. City & Cty. of Denver, Colo.*, No. 05-cv-00242-MSK-MEH, 2007 WL 162743 (D. Colo. Jan. 17, 2007) (adopting same factors). The party seeking reimbursement has the burden of establishing "the existence and reasonableness of the costs or fees incurred, and that these expenses should be shifted." *In re Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4.

### III. Analysis

The BOCC requests that the Court shift fees and costs in an amount "appropriate under the circumstances" pursuant to Fed. R. Civ. P. 45 based on the following: (1) Defendant failed to take reasonable steps to avoid imposing undue burden or expense on the BOCC; (2) the BOCC, as a nonparty, ought to be protected from the significant expense resulting from its compliance with the Subpoena; and (3) compliance with the Subpoena would have "required the disclosure of privileged or other protected material under several well-recognized privileges." *Motion* [#69] at 2.

In its Response [#76], Defendant asks the Court to deny the Motion [#69] for the following reasons: (1) the Subpoena did not impose an undue burden on the BOCC; (2) the costs incurred by the BOCC in resisting the disclosure of documents were unreasonable and unnecessary and thus not recoverable under Fed. R. Civ. P. 45; (3) the cost of

production was not significant when compared to the BOCC's financial status; and (4) the equities do not favor any shifting of costs. [#76] at 3-13. In short, Defendant requests that the Court limit cost-shifting "to the $3,060 in costs that were actually incurred in complying with the subpoena." *Id.* at 15-16.

In its Reply [#78], the BOCC asserts that it took all reasonable steps in complying with the Subpoena and that the attorney's fees and costs incurred are reasonable based on the following grounds: (1) the BOCC is a nonparty, public entity asserting a claim of privilege pursuant to Fed. R. Civ. P. 45(e)(2), (2) the BOCC is not an interested party in this case; (3) Defendant is better able to bear the expense; (4) the case lacks public importance; and (5) the BOCC notified Defendant that a review for responsiveness and privilege was necessary. *Reply* [#78] at 3, 7, 9, 13, 14. The BOCC points out that the rates it paid which are specifically attributable to external attorney's fees are substantially lower than local market rates. *Id.* at 15.

The Court first addresses the BOCC's external attorney's fees, which comprises the majority of expense the BOCC incurred, before addressing the internal attorney's fees and costs.

## A.    External Attorney's Fees

One of the factors courts examine in determining whether and to what extent to shift expenses resulting from a nonparty's compliance with a subpoena is the reasonableness of the attorney's fees and costs incurred. *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4. As mentioned above, the BOCC seeks to shift both external and internal attorney's fees as well as the costs of production to Defendant. In its Motion

to Quash [#27], the BOCC initially estimated its total cost of compliance with the Subpoena to be $8,350.20, which included internal attorney's fees and costs of production. *See BOCC's Ex. J* [#27-10]. The BOCC did not claim or suggest that there would be any external attorney's fees at that time. *Id.* However, the BOCC now claims in the Motion that the cost of compliance is actually $84,896.31, which it attributes to: $3,060.00 for 102 hours of staff time at $30.00 per hour to review documents; $15,496.31 for the cost of hosting and uploading responsive material with a third-party vendor; and $66,340.00 for external attorney's fees to perform a review for responsiveness and privilege. [#69] at 3-4. The BOCC also seeks an additional $20,616.50 for fees incurred since the filing of the Motion. *Billing Records* [#87-2] at 38. Thus, the total actual cost of the BOCC's compliance is more than twelve times its estimated cost. *Order* [#59] at 12; *Motion* [#69] at 1; *Billing Records* [#87-2] at 38.

The BOCC asserts that these additional external attorney's fees are reasonable because: (1) the BOCC's status as a nonparty, public entity asserting a claim of privilege pursuant to Fed. R. Civ. P. 45(e)(2) required the creation of a privilege log and, in turn, a subsequent review for responsiveness and privilege; (2) the BOCC notified Defendant that a review for responsiveness and privilege was necessary; and (3) the BOCC's billing rates are reasonable per the local market rate. *See generally Reply* [#78]. Still, by its own admission, the expenses the BOCC incurred "have outpaced the BOCC's initial estimate by a factor of ten (10)." *Motion* [#69] at 6. Defendant argues that the expenses the BOCC seeks to shift are unreasonable because: (1) the BOCC grossly underestimated its cost of compliance and failed to mention the need for external attorney's fees for the review for responsiveness and privilege; and (2) the BOCC failed to notify Defendant about the

significant increase in the cost of compliance resulting from the review for responsiveness and privilege. *See Response* [#76].

On December 13, 2018, the BOCC filed an unopposed Motion for Extension of Time [#60] and notified the Court of the need for a privilege review, yet failed to give notice as to even an estimated increase in cost the privilege review required. *See Motion for Extension of Time* [#60]. On December 26, 2018, the BOCC emailed Defendant and stated that, due to the scope of discovery, "the sheer volume of duplicative documents may mean that [the BOCC] need[s] to request an additional extension of time to respond to the Subpoena." *BOCC's Ex. C* [#69-3] at 13. Despite providing notice that it required additional time for the privilege review, the BOCC again failed to give notice of its need to hire external attorneys and the associated increase in expense to comply. *Id.* at 12-13. On January 9, 2019, the BOCC informed Defendant that it would produce more than 33,000 documents the following day along with a privilege log "possibly more than 100 pages in length," although it cautioned anticipating filing a second motion for extension of time as it "still had at least that many documents over again to review for responsiveness and privilege . . . ." *Id.* at 9-10. The BOCC failed to inform Defendant of an increase in its projected expense to comply in relation to the need for a second privilege review and external attorney's fees necessitated by the review. *See id.* On January 10, 2019, the BOCC filed a second Motion for Extension of Time [#63], which it cites in support of its assertion that it provided Defendant "notice of the cost of [its] efforts at compliance with the Subpoena." *Reply* [#78] at 9. However, the Court finds no evidence of any notification of external attorney's fees in the BOCC's motions for extension of time. *See Motion for Extension of Time* [#60]; *see Motion for Extension of Time* [#63]. As Defendant correctly

notes, "[t]he BOCC's initial gross underestimation failed to provide Defendants any notice about the cost of production" and "included no mention of outside counsel fees . . . ." *Response* [#76] at 11; *see* [#69]. Finally, on February 20, 2019, the BOCC notified Defendant that it would seek to shift fees and costs incurred but that it seemed, under the terms of the Order [#59], that the BOCC first needed to conclude its efforts at complying before it could offer the Court a firm number as to the fees and costs it seeks to shift. *BOCC's Ex. C* [#69-3] at 4-5.

As Defendant points out, the overall cost of the BOCC's compliance significantly increased from $8,350.20 to $105,512.81, yet the BOCC's actual cost of compliance in terms of internal time costs was lower than its original estimate of $4,545.00 at a total cost of $3,060.00, a difference of $1,485.00. *Response* [#76] at 11. The Court finds, as discussed further below in Section III.B.4, that the BOCC's assertion of privilege and its subsequent creation of two privilege logs were not frivolous; however, the Court is unpersuaded by the remainder of the BOCC's argument. Although the BOCC informed Defendant about its need for more time due to the assertion of privilege, the BOCC failed to notify Defendant as to the increase in cost this would cause in relation to external attorney's fees. While the Tenth Circuit has no binding precedent on the issue of whether a nonparty must disclose at the outset any expected additional costs to be incurred as a result of complying with a subpoena, both Defendant and the BOCC cite to *Angell v. Shawmut Bank Connecticut National Association*, 153 F.R.D. 585 (M.D.N.C. 1994), for support.

In *Angell,* the petitioners' counsel agreed in an affidavit to "pay the reasonable costs of copying any documents produced." *Angell*, 153 F.R.D. at 587. The BOCC interprets this

to mean that there was an "implicit and explicit agreement between the nonparty and the requesting party to share costs that more closely bound their ability to seek costs, which is not the case here . . . ." *Reply* [#78] at 10 (internal quotation marks omitted). The parties in *Angell* did have an agreement regarding who would pay the cost of copying documents; however, the crux of Defendant's issue with the amount the BOCC seeks to shift derives from the external attorney's fees it claims, and the court in *Angell* found "no specific agreement that the production costs would include attorney's fees." *Angell*, 153 F.R.D. at 590. Moreover, the court reasoned that "[b]ecause costs are extraordinary, petitioners would have had to provide respondent with clear advance notice that such unusual costs were part of their agreement . . . ." *Id.* "Instead, they only informed respondent that the production would involve a large amount of documents. This is not an adequate notice that the production will involve attorney's fees. Nor did petitioners make any explicit mention of any extensive review by attorneys to separate out privileged documents." *Id.* at 591.

The court held that the "petitioners cannot recover attorney's fees or production costs at attorney fee rates" because they failed to give adequate notice that the production would involve attorney's fees. *Id.* The court determined that the remaining matter was the calculation of reasonable costs of production and copying, which included employee time and copying charges. *Id.* The petitioners were awarded the reasonable costs of production and copying, including the employee time; however, the court limited the amount of awardable hours because it "found no basis for believing an attorney was required to collect and review the files and that respondent was notified of this fact and agreed to it." *Id.* Thus, the petitioners could not "recover attorney's fees at the attorney's hourly rate of compensation." *Id.* The *Angell* court awarded the petitioners no attorney's fees or

attorney's fees rates for production, but did award petitioners for "the amount of time an employee would have expended in collecting and selecting the documents before copying." *Id.* In total, the petitioners in *Angell* sought $5,567.41 in attorney's fees and costs but were awarded only $500 for the reasonable cost of copying documents by petitioners. *Id.*

The Court finds Defendant's argument persuasive that "[m]erely informing the subpoenaed party the production will involve a large number of documents is not enough." *Response* [#76] at 11 (citing *Angell*, 153 F.R.D. at 591). The BOCC purports that its actions in the instant case differ from those made by petitioners in *Angell* because it put Defendant on notice as to the need for an extensive review by attorneys to separate privileged documents and that it put Defendant "on notice the fees for such review would be sought as costs" and that Defendant "never objected." *Reply* [#78] at 6 (citing *Heartland's Ex. 5* [#74-5] at 4-5, 8-9). The Court disagrees. The BOCC, like the petitioners in *Angell*, notified Defendant that a more extensive review would be necessary, yet its effort to put Defendant on notice that external attorney's fees for the review would be sought as costs came only after it had already incurred the external attorney's fees. *See BOCC's Ex. C* [#69-3] at 4-5, 8-13; *see also Heartland's Ex. 5* [#74-5] at 4-5, 8-12. The BOCC erred, as did the petitioners in *Angell*, in only notifying Defendant that a more extensive review was necessary while failing to notify Defendant that the review necessitated a significant increase in expense. *Id.*; *see Bell Inc. v. GE Lighting, LLC*, No. 6:14-cv-00012, 2014 U.S. Dist. LEXIS 56170 (W.D. Va. Apr. 23, 2014) (denying nonparty's request to shift attorney's fees because it never disclosed the costs it incurred until after much of the work had been done). Further, Defendant objected to the BOCC's shifting of fees and costs once the BOCC notified Defendant that it would file the Motion [#69]. *BOCC's Ex. C* [#69-3] at 4*;*

*see generally Response* [#76].  The BOCC failed to notify Defendant of the increase in the cost of compliance in surmising that the Order [#59] required that it conclude its efforts at complying before it could disclose a number regarding the costs and fees it incurred and which it now seeks to shift to Defendant.  *See BOCC's Ex. C* [#69-3] at 4-5 (email to Defendant stating BOCC would file a motion to shift costs and "disclose a firm number" only after concluding its efforts at complying with Defendant's Subpoena).

Thus, the cited evidence does not support the BOCC's argument that it provided Defendant adequate notice as to the significant increase in expense due to the need for external attorney's fees.  Because notice is a dispositive issue here, *Angell*, the BOCC's Motion [#69] is **denied** to the extent the BOCC requests $86,956.50 in external attorney's fees from Defendant.

**B.      Internal Attorney's Fees and Costs of Production**

The BOCC provided Defendant with an estimated cost of compliance regarding internal attorney's fees and the costs of production.  The Court addresses whether and in what amount to shift these remaining expenses based on the following factors: (1) whether the BOCC is an interested party; (2) who can best bear the expense; (3) whether the case is of public importance; (4) the scope of discovery and the need to separate privileged or irrelevant material; and (5) the reasonableness of internal attorney's fees and costs of production.  *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4.

**1.      Nonparty BOCC's Interest**

The first factor addresses whether the BOCC is an interested party in the outcome of this case.  *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4.

Defendant asserts that "[t]he BOCC's actions from 2013 through the present are directly relevant to this dispute" and notes that "the BOCC is a defendant in a related suit in Denver District Court." *Response* [#76] at 13-14. Defendant reasons that "[t]he fact that the BOCC is participating in other, related proceedings, in which it would be required to produce all the subpoenaed documents, demonstrates that cost-shifting is inappropriate in this case." *Id.* at 11. Defendant also states that its "operation was . . . a source of revenue and employment for [the BOCC] and its residents," although Defendant provides no evidence to support this benefit allegedly incurred by the BOCC. *BOCC's Ex. A* [#27-1] at 2. Instead, Defendant cites a D.C. District Court case for support which held that, "[w]here the non-party was involved in litigation arising out of the same facts or was substantially involved in the underlying transaction, courts have found the non-party to be interested in the outcome of the litigation." *In re Subpoenas to Folliard*, No. 10-mc-789 (ESH)(AK), 2012 WL 907763, at *3 (D.D.C. Mar. 16, 2012).

However, as the BOCC correctly notes, the court in *Folliard* determined that the nonparty's substantial involvement resulted from a strong financial interest from being a consultant to the law firm of the defendant in one related lawsuit and by directly representing a second defendant in a second lawsuit. *Id.* The BOCC avers that "a nonparty being 'interested' for purposes of Rule 45 necessarily must involve the presence within that nonparty of a significant financial connection to the subject matter and the outcome of the lawsuit" and "not merely parallel litigation or regulatory involvement with the subject matter of the lawsuit." *Id.* at 12 (internal quotation included). The BOCC maintains that it "had no involvement (financial or otherwise) in any contractual negotiations between or formal contractual relationship involving Plaintiff and Defendant[] . . . ." *Reply* [#78] at

8.

Ultimately, the Court finds the BOCC's argument unpersuasive. Courts in this District have held that an award of costs or fees for document review is inappropriate where the subpoenaed nonparty is interested in the case. *See, e.g.*, *In re Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at \*4. In determining that the nonparty respondents in *In re Application of Michael Wilson and Partners, Limited* were interested parties, the Court found that the underlying litigation related "directly to their projects and dealings with parties on both sides of the underlying dispute" and that the respondents were involved in related overseas litigation, with one named as a party. *Id.* Moreover, another recent case on the subject held that "[w]hen a party from whom documents are sought is not a classic disinterested non-party . . . the court can order that the non-party produce the documents at its own expense." *In re EpiPen Mktg., Sales & Antitrust Litig.*, No. 17-md-2785-DDC-TJ, 2019 U.S. Dist. LEXIS 16659, at \*15 (D. Kan. Feb. 4, 2019) (internal quotation and citations omitted). Here, the BOCC is a party in the State Court Action which arose out of facts similar to those that gave rise to the instant case. *See supra* § I. Thus, the Court finds that the BOCC is an interested party and therefore finds that this factor weighs against shifting attorney's fees and costs.

### 2.    Ability to Bear Expense

The second factor addresses which entity is best able to bear the expense of production. *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at \*4. In the instant Motion [#69], the BOCC fails to discuss why Defendant is better able to bear the expense. Instead, the BOCC assumes that "[t]here can be no dispute" that it "sustained significant expense" complying with the Subpoena despite the BOCC's own admission that

it was "unable to track down any case law defining the contours of what constitutes a 'significant' expense under Rule 45 . . . ." *Id.* at 9 (internal quotation included). The BOCC concludes that "by any measure expenditures of at least $84,896.31 in the aggregate surely qualif[ies] as significant" without explaining why this cost is significant in light of the BOCC's financial status. *Id.* at 7-8.

Defendant's Response highlights the BOCC's failure "to produce any evidence indicating it cannot more readily bear the costs of production." [#76] at 15. According to Defendant, the BOCC is "perfectly poised to bear the costs of production in this case" due to its projected excess revenue of $2,990,012.00 for 2019. *Id.* The BOCC's entire requested amount, Defendant contends, is "only 2.8%" of the money projected to be leftover in 2019.[2] *Id.* at 15-16. Moreover, Defendant points out that, excluding attorney's fees, "the cost of compliance with the subpoena amounts to a mere 0.62%" of the BOCC's excess revenue. *Id.* Defendant does not provide information on its own financial status showing why it cannot more readily bear the expense but instead surmises that its financial condition "should be evident given that the BOCC ordered [Defendant] to stop operating . . . back in December 2016." *Id.* at 15.

The BOCC points out Defendant's failure to provide evidence on this issue and notes in its Reply that "publicly available evidence states the net revenue for [Defendant] well outpaces" its own projected excess revenue for 2019. [#78] at 13. The BOCC reasons that because Defendant "is a wholly-owned subsidiary of Defendant EDF Renewable Development, Inc., which is a subsidiary of EDF Energies Nouvelles, which is

---

[2] This estimate does not include the additional "fees-on-fees" requested by the BOCC totaling $20,616.50. *Billing Records* [#87-2] at 38.

the renewable energy arm of the EDF Group" that the financial statement for "EDF Group (and thus [Defendant])" stated a 2018 net income of 1,177 million euros. *Id.* At the time the BOCC filed its Reply, "this translated to $1,330,598,500.00 . . . ." *Id.* at 13-14 (citation omitted). Thus, the BOCC concludes that "[Defendant's] 2018 excess revenue is more than 445 times that of the BOCC's 2019 projected excess revenue." *Id.* at 14.

As the party seeking to shift attorney's fees and costs, the BOCC bears the burden of demonstrating that it cannot more readily bear the expense than Defendant. *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *5 (holding that an absence of additional evidence showing respondents could not more readily bear costs weighed against the shifting of expenses). The BOCC has produced evidence that Defendant's 2018 excess revenue is overwhelmingly greater than the BOCC's 2019 projected excess revenue, while Defendant simply claims that its financial condition "should be apparent." Defendant has failed to provide evidence showing why, according to its own financial status, it cannot more readily bear the expense than the BOCC. The Court therefore finds this factor weighs in favor of shifting attorney's fees and costs.

### 3. Public Importance of the Litigation

The third factor addresses whether the litigation is of public importance. *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4. When a case "involves the purely private business interests of the litigating parties" it is not of public importance. *Id.* at *5. The BOCC asserts in the Motion that "this case is purely a private dispute between two business[es] and no public importance is apparent." [#69] at 7. Defendant fails to address this factor it its Response and gives no evidence as to why this case is of public importance. *See* [#76]. The BOCC argues that "by not responding to the

BOCC's argument in its Motion that this case lacks public importance, [Defendant] concedes this factor weighs heavily in favor of the BOCC for purposes of shifting costs." [#78] at 14. Plaintiff has sued Defendant under both contract and tort claims after the CDPHE and the BOCC shut down Defendant's renewable energy facility. *See generally Second Am. Compl.* [#102]. Thus, Plaintiff and Defendant both appear to be private entities litigating purely private business interests. *Id.* at 4. The Court therefore finds that this factor weighs in favor of shifting attorney's fees and costs.

### 4. Scope of Discovery and Need to Separate Material

The fourth factor addresses the scope of discovery and the need to separate privileged or irrelevant material. *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4. The BOCC asserts several privileges in support of the creation of its two voluminous privilege logs. *Reply* [#78] at 4. Pursuant to Fed. R. Civ. P. 45 (e)(2), which requires that any claim of privilege be made expressly, the BOCC claims that it "had no choice but to undertake a privilege review." *Id.* at 3. As a public entity, the BOCC has "a greater obligation to document and preserve its governmental privileges." *Id.* at 4. The BOCC reasons that "given no court has declared the designations unreasonable," its claims of privilege "should be deemed presumptively reasonable for purposes of the Court's ruling on this Motion." *Id.* 3-4.

Defendant avers that the BOCC "chose to undertake an extensive and detailed privilege review to resist disclosing documents by making unsound privilege claims." *Response* [#76] at 8. However, the Court has examined the first privilege log[3] created by

---

[3] The BOCC's second, supplemental privilege log has not been presented to the Court.

the BOCC and finds that, at a minimum, the creation of such a log was not simply a frivolous endeavor which needlessly drove up to the costs of this document production, especially given the BOCC's status as a government entity asserting privilege pursuant to Fed. R. Civ. P. 45(e)(2).[4]  *See BOCC Privilege Log* [#74-3].

Further, the Court finds no indication, and Defendant does not argue, that the BOCC went outside the scope of discovery required by Defendant's Subpoena.  *See generally Response* [#76].  Although Defendant alleges that the BOCC "unnecessarily produced duplicative documents," the BOCC complied with the Court's Order [#59] to respond to the Subpoena.  [#59] at 9.  According to Defendant, "[t]he BOCC produced 4,421 documents, and 1,487 were exact duplicates."  *Response [#76]* at 5 n.3.  Defendant, however, concedes that "the documents requested are directly relevant to the dispute between Defendant[] and [Plaintiff] . . . ."  *Response* [#76] at 5.  As such, the Court finds that the scope of discovery was relevant and that the BOCC took reasonable steps to separate responsive information from privileged or irrelevant material.  This factor therefore weighs in favor of shifting attorney's fees and costs.

### 5.    Reasonableness of Internal Attorney's Fees and Costs of Production

The fifth factor addresses the reasonableness of the BOCC's internal attorney's fees and costs of production.  *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4.  As noted above, the BOCC's initial estimate in terms of internal costs was $8,350.20, consisting of $4,545.00 in time costs and $3,805.20 in technology costs; however, the actual total was $18,556.31, consisting of $3,060.00 in internal time costs and

---

[4] The Court makes no comment on the ultimate resolution of any privilege issues other than to say that the BOCC's assertions of privilege were not frivolous.

$15,496.31 in technology costs. *Response* [#78] at 11. It is undisputed that the BOCC provided Defendant with notice of the internal time and technology costs. *BOCC's Ex. J* [#27-10] at 1. Defendant concedes that "[i]f this Court determines any cost-shifting is appropriate in this case, it should be limited to the $3,060 in costs that were actually incurred in complying with the subpoena." *Response* [#76] at 16. The BOCC attributes the $3,060.00 to "102 hours of staff time to retrieve and review tens of thousands of pages of documents, chargeable at $30/hour . . . ." *Motion* [#69] at 3. The Court agrees that this time is a recoverable cost, especially in light of the fact that it includes internal attorney's fees and is $1,485.00 less than the BOCC's initial estimate of $4,545.00. *See Angell*, 153 F.R.D. at 591 (holding that time is a recoverable cost where the petitioners had to conduct a broad search and spent a significant amount of time retrieving and culling documents).

In the Motion, however, the BOCC also claims additional internal costs of production "attributable to the cost of hosting and uploading the massive volume of potentially responsive material with a third-party vendor . . . ." in the amount of $15,496.31, an increase of $11,691.11 from its original estimate of $3,805.20. [#69] at 3; *see BOCC's Ex. J* [#27-10]. Defendant argues that BOCC's request to shift the cost of the third-party vendor is unreasonable because the BOCC "paid additional fees for hosting the data while it conducted an extensive privilege review for its own benefit . . . ." *Response* [#76] at 12. The Court is not swayed by Defendant's argument. The Court held in *In re Michael Wilson & Partners, Ltd.*, that "reimbursement of a portion of the costs incurred in connection with implementing the database" was appropriate because "such a database was to the benefit of both [the requesting party and the nonparty] since, if used correctly, it had the potential to significantly reduce document production costs and streamline the search process.

Moreover, the [nonparty] otherwise would not have had any use for such a system." *In re Application of Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *7. Although the BOCC's technology costs increased by more than $10,000.00, it had notified Defendant that compliance with the Subpoena would include technology costs. *See BOCC's Ex. J* [#27-10]. The BOCC's assertion of privilege necessitated the cost of a third-party vendor to upload the potentially responsive material and explains the reasonable increase in the BOCC's estimated technology cost. *See Bell Inc. v. GE Lighting, LLC*, U.S. Dist. LEXIS 56170, at *48-49 (awarding costs for nonparty's use of a third-party vendor to create a database); *see also Bailey Indus., Inc. v. CLJP, Inc.*, No. 3:10-mc-64/MCR/EMT, 270 F.R.D. 662, at *672-73 (ordering issuing party to pay nonparty's reasonable costs to conduct computer searches while noting a nonparty is not entitled to costs "disproportionate to the demands made").

The BOCC incurred the third-party vendor costs as a direct result of complying with the Subpoena because it is a government entity asserting privilege. The creation of the third-party vendor database benefitted Defendant and, but for needing to comply with the Subpoena, the BOCC would not have incurred the additional $15,496.31 in costs. Further, the internal time costs were reasonable and were less than the BOCC's original estimate. The Court therefore finds that this factor weighs in favor of shifting internal attorney's fees and costs.

### 6.     Conclusion

Balancing the above factors, four weigh in favor of shifting internal fees and costs to Defendant while one weighs against it. Because the majority of the factors weigh in favor of shifting internal fees and costs to Defendant, the BOCC's Motion [#69] is **granted**

to the extent the BOCC requests to shift $18,556.31 (comprised of $3,060.00 in staff time costs and $15,496.31 in third-party vendor costs) to Defendant.

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#69] is **GRANTED in part** and **DENIED in part**. The Motion is **granted** to the extent that Defendant shall reimburse the BOCC in the amount of $18,556.31 (consisting of $3,060.00 in staff time costs and $15,496.31 in third-party vendor costs) **no later than December 16, 2019**.  The Motion is **denied** in all other respects.

Dated:  November 15, 2019

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge