**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:18-cv-01060-RM-KLM

LAMBLAND, INC. d/b/a A-1 Organics, Inc., a Colorado corporation,

    Plaintiff,

v.

HEARTLAND BIOGAS, LLC, a Denver limited liability company,

    Defendant.

---

# ORDER

---

This breach of contract case is before the Court on Plaintiff's motion for partial summary judgment on Defendant's liability (ECF No. 137), Defendant's motion to amend its answer to add affirmative defenses of mutual mistake and impossibility (ECF No. 155), and Plaintiff's motion for sanctions for Defendant's late disclosure of two witnesses and an email (ECF No. 172). Defendant's motion to correct and supplement the record (ECF No. 169) is deemed withdrawn in light of the parties' September 15, 2020 stipulation (ECF No. 179), as are Plaintiff's statement of undisputed material fact ¶ 9 and Defendant's response to it. For the reasons below, the Court grants partial summary judgment in Plaintiff's favor on the issue of liability, denies Defendant's motion to amend, and denies without prejudice Plaintiff's motion for sanctions.

## I. LEGAL STANDARDS

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

A motion for leave to amend the complaint should be granted when justice so requires. Fed. R. Civ. P. 15(a)(2). But after a scheduling order deadline, a party seeking leave to amend must demonstrate good cause. *See* Fed. R. Civ. P. 16(b)(4). Courts "generally refuse leave to amend only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of

amendment." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

Under Fed. R. Civ. P. 37(c)(1), district courts have discretion to impose sanctions when a party fails to provide information or identify witnesses as required by Fed. R. Civ. P. 26. In exercising that discretion, courts consider (1) the prejudice or surprise to the party against whom the testimony or evidence is offered, (2) the ability of the party to cure the prejudice, (3) the extent to which introducing such testimony or evidence would disrupt the trial, and (4) the moving party's bad faith or willfulness. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017).

## II. BACKGROUND

The agreements in this case pertain to a solid waste facility in Weld, Colorado. Defendant acquired the facility from Heartland Renewable Energy, LLC ("HRE") in 2013. Under Colorado law, owners and operators of such facilities are required to have a certificate of designation ("CD"). *See* Colo. Rev. Stat. § 30-20-102(1) ("Except as otherwise specified in this section, a person who owns or operates a solid wastes disposal site and facility shall first obtain a certificate of designation from the governing body having jurisdiction over the area in which such site and facility is located."). Before assigning its assets to Defendant, HRE acquired a CD as well as a use by special review ("USR") permit from the Weld County Board of County Commissioners ("BOCC"). A primary issue in this case is whether Defendant acquired HRE's CD.

In August 2015, Plaintiff entered into a lease and a substrate services agreement with Defendant. (ECF. No. 154 at ¶¶ 16, 19). The plan was for Plaintiff to operate a substrate digester processing system at the facility and to supply Defendant with substrate materials necessary for it to generate and deliver biogas to a third party. (*Id.* at ¶¶ 16, 22.) Both agreements contain provisions requiring Defendant to obtain the governmental approvals needed to lawfully operate the facility. For example, the lease specifically provides that "[t]he performance and compliance by [Defendant] with all the terms, provisions and conditions of this Lease will not and do not conflict with or result in any violation of any of the terms, conditions or provisions of any agreement, obligation, judgment, decree, order, ordinance, statute, rule or regulation applicable to [Defendant] or to the [Facility]." (*Id.* at ¶ 17.) And the substrate services agreement provides that "[e]ach [p]arty will comply with all applicable Laws required to be complied with in order to satisfy its obligations set forth in this Agreement . . . ." (*Id.* at ¶ 21.)

In November 2016, the state Attorney General's Office determined that Defendant had failed to obtain a CD. (*Id.* at ¶ 26.) On December 5, 2016, the Weld County Department of Public Health and Environment ("WCDPHE") told Defendant that it needed to immediately submit all necessary documentation and follow the processes outlined in Colo. Rev. Stat. § 30-20-103 to obtain a new CD because the operator of the facility and the owner of the land had both changed since the original CD was issued to HRE. (ECF No. 137-8.) Defendant responded by letter, requesting that the BOCC "formally modify" the CD HRE had obtained for the facility to reflect Defendant as the new owner. (ECF No. 137-9 at 1.)

Meanwhile, following an inspection on December 12, 2016, the WCDPHE found numerous regulatory violations at the facility, including the lack of a CD. (ECF No. 154

4

at ¶ 29.) A week later, the BOCC held a hearing on the regulatory violations and suspended the USR permit for the facility until Defendant got a valid CD and came into compliance with the permit and several applicable development standards. (*Id.* at ¶ 30.) Soon after the suspension, Defendant shut down the facility. (*Id.* at ¶ 31.) Once facility operations ceased, Defendant was unable to accept any substrate from Plaintiff. (*Id.* at ¶ 36.)

Plaintiff filed this lawsuit in May 2018, asserting two claims for breach of contract based on the agreements above and alleging that Defendant did not have the necessary governmental approvals and certifications necessary for the performance of the agreements because it did not have a valid CD.

Defendant contends that it did have a valid CD. Though it admits that it did not apply for and obtain a CD from the BOCC, Defendant argues that HRE transferred its CD to Defendant when Defendant acquired the facility in 2013. Defendant further argues that even if it did not have a valid CD, it is not liable under the agreements, that the agreements are void based on the parties' mutual mistake as to whether it had a CD, and that its performance is excused because the suspension of the USR permit and CD was a force majeure event that rendered the agreements impossible to perform. (ECF No. 144 at 19.)

**III.    ANALYSIS**

    **A.    Motion for Partial Summary Judgment**

To prevail on its breach of contract claims, Plaintiff needs to show (1) the existence of a contract, (2) its own substantial performance or some justification for nonperformance, (3) Defendant's failure to perform, and (4) resulting damages. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Plaintiff contends there are no genuine issues of material fact

that it substantially performed its obligations under the lease and substrate services agreements, that Defendant failed to perform because it did not obtain a CD, and that Plaintiff suffered some amount of damages as a result. The Court agrees.

Defendant first argues that Plaintiff failed to perform its obligations under the agreements because "[i]f there were any issues related to 'permits' required by Governmental Requirements or Environmental laws, under the Lease [Plaintiff] was contractually required to resolve those issues." (ECF No. 144 at 8.) But none of the lease provisions cited by Defendant expressly places the CD requirement on Plaintiff's shoulders. Further, § 30-20-102(1) clearly places that responsibility on entities such as Defendant, that own or operate a solid wastes disposal site and facility. Placing that requirement on Plaintiff would make little sense in this context, where Plaintiff was not the owner or operator of the facility.[1] With respect to the substrate services agreement, Defendant makes a circular argument that if it was not complying with the law, then Plaintiff could not have been, either. But again, nothing in either agreement expressly makes Plaintiff responsible for Defendant's CD. The Court finds that imposing such a requirement on Plaintiff would be an unreasonable interpretation of the agreements and that Defendant has not shown Plaintiff was contractually obligated to obtain or resolve issues with the CD.

Defendant also argues that Plaintiff breached the agreements because it was responsible for an odor violation at the facility. But Defendant has adduced no admissible evidence that the violation is attributable to Plaintiff. Nor has Defendant shown that a single such violation could

---

[1] As Plaintiff notes in its reply, its digester processor system is a "transfer station" under the relevant regulations and did not require a CD. (*See* ECF No. 153 at 4 n.1.)

establish that Plaintiff used the demised premises for illegal purposes in violation of the parties' agreements.

Defendant also argues that Plaintiff failed to meet is obligation to pay rent for the period commencing on January 31, 2017 and terminating on March 8, 2018. However, by that point the BOCC had suspended Defendant's USR permit and it was clear that Defendant had breached the agreements by failing to obtain a valid CD. As a result, Plaintiff did not have a duty to continue paying rent. Defendant's contention that Plaintiff anticipatorily repudiated the substrate services agreement in March 2017 is unavailing for the same reason. Defendant has not identified any other obligation Plaintiff had that it did not meet and has failed to raise a genuine issue with respect to Plaintiff's performance under the agreements.

Turning to Defendant's performance under the agreements, Plaintiff, Defendant, and the BOCC apparently assumed Defendant had a valid CD when it began operating in 2013. By the December 2016 BOCC hearing, however, that assumption had ceased—at least, as far as Plaintiff and the BOCC are concerned. To the extent Defendant's "understanding" that it had a CD has any relevance, the Court finds that any reasonable basis for such an understanding ceased after that hearing.[2] With its suspension of Defendant's USR permit, the BOCC explicitly rejected Defendant's contention that it had a valid CD that had somehow been transferred from HRE. Admitting that it did not follow the application procedure set forth by statute, which includes a thirty-day public comment period, *see* Colo. Rev. Stat. § 30-20-103, Defendant

---

[2] To the extent Defendant argues that it relied on multiple attorneys, including in-house counsel at its parent company, and an outside consultant known as AgPro, Defendant has adduced no evidence that any of these sources continued to assert that Defendant had a valid CD after the December 2016 hearing.

continues to insist that it obtained a valid CD from HRE by some other means. The Court is not persuaded.

First, it is not clear that such a means exists. Although there appears to be no controlling caselaw on this issue, in *City and County of Denver v. Eggert*, 647 P.2d 216, 226 (Colo. 1982), the court stated in dicta that Colo. Rev. Stat. § 30-20-104(1) "implies that a new certificate is required when there is a change of operator" and that "normally, a certificate to operate a particular site and facility is personal and nontransferable without prior approval." In support of its theory that it obtained HRE's CD, Defendant cites to Rule 1.8.4(D) from the Colorado Code of Regulations, a since-deleted rule which provided as follows: "A certificate of designation may not be transferred to a new owner or operator unless, as part of the process, the assignment or transfer of the financial instrument(s) or alternative financial assurance has been reviewed and approved by the Department and the governing body having jurisdiction." 6 CCR § 1007-2:1-1.8.4(D). Defendant has identified no authority as to what this review and approval involved or what other steps, if any, this transfer process might have entailed. Thus, if a method for transferring a CD exists that is outside the statutory procedure outlined in § 30-20-103 but still consistent with Colorado law, then its parameters are seemingly limited and at the same time not clearly defined.

Second, assuming there is such a method, Defendant has not shown that its dealings with the BOCC and the Colorado Department of Public Health and Environment ("CDPHE") resulted in their approval of such a transfer in this case. Defendant points to a letter dated October 28, 2013, by which it purportedly informed Weld County about Defendant's acquisition of HRE's assets. The intended recipient of the letter is not entirely clear, as it is addressed "To Whom It

May Concern" (ECF No. 170-4), but in any event the fact that Weld County was notified about Defendant's acquisition of HRE's assets is insufficient to raise a genuine issue as to whether a transfer of the CD was approved. Defendant cites no authority for the proposition that it could have unilaterally accepted the transfer of a CD merely by announcing a change in ownership at the facility. Defendant also points to the financial assurance it provided to CDPHE and Weld County and their approval of those assurances. (*See* ECF No. 154 at ¶¶ 56, 57.) But the Court does not accept Defendant's apparent assumption that whatever approval it received based on its financial assurances is equivalent to approval of a valid CD or transfer of a CD. At least one BOCC board member expressly rejected this argument at the December 2016 hearing, stating that Defendant had "buried" the financial assurance in a revision to the engineering, design, and operation plan and that "[t]hat's not an approval for a transfer." (ECF No. 137-11 at 77, p. 304 ll. 6-7.) The Court finds that Defendant's financial assurances do not raise a genuine issue as to whether the BOCC approved the transfer of HRE's CD to Defendant. Defendant's contention that it met or could meet all requirements for obtaining a CD is also unavailing. Allowing owners and operators to obtain a CD by declaration would utterly undermine the statutory process for doing so. In short, Defendant has identified no evidence in the record raising a genuine issue that it had a valid CD.

Next, Defendant argues that even if it did not have a CD, it was not obligated to have one under its agreements with Plaintiff. But the Court finds that the provisions of the agreements cited above created such an obligation. In addition, Defendant's attempt to place this obligation on Plaintiff is undermined by another provision of the substrate services agreement, which requires "[e]ach [p]arty" to comply with all applicable laws. (ECF No. 154 at ¶ 20.) Moreover,

9

under Colorado law "[i]t is axiomatic that a contract must be construed to ascertain and effect the mutual intent of the parties." *May v. United States*, 756 P.2c 362, 369 (Colo. 1988). There can be no real debate that the overall intent of the agreements was for Plaintiff to operate a substrate digester processing system at Defendant's facility and to supply substrate materials. That could not be lawfully accomplished without Defendant having a valid CD. *See* § 30-20-102(1). Defendant cites no specific provision in the agreements that places such an obligation on Plaintiff, and such a requirement would make little sense under the circumstances of this case. Therefore, the Court cannot accept Defendant's contention that it was Plaintiff's obligation to make sure that Defendant had a valid CD.

In addition, Defendant makes two arguments that it failed to raise as affirmative defenses in its answer: mutual mistake and impossibility. These arguments lack merit. Although the parties both mistakenly believed Defendant had a valid CD when they entered into the agreements, it was Defendant that bore the risk of mistake because, as the Court has already determined, Defendant was contractually obligated to obtain a CD. *See Restatement (Second) of Contracts* § 154 (2020) ("A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.").

Nor is there evidence to support Defendant's impossibility argument. "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the

contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." *Id.* § 261.  Defendant has cited no evidence that obtaining a CD would have been impossible or that, as a result of the CD requirement or the BOCC's suspension of its USR permit, its performance under the agreements was vitally different from what reasonably should have been within the contemplation of the parties when they entered into the agreements.  To the contrary, Defendant asserts that it "met or could meet all requirements for obtaining a CD."  (ECF No. 154 at ¶ 58.)  On this record, there is no basis for concluding that Defendant's performance was excused.

Accordingly, the Court finds Plaintiff is entitled to partial summary judgment on the issue of Defendant's liability.

### B. Motion to Amend

In its answer, Defendant raises the following affirmative defense: "Plaintiff's damages, if any, were caused by third parties over whom [Defendant] had no control."  (ECF No. 105 at 11.)  After Plaintiff's motion for partial summary judgment was fully briefed, Defendant filed its motion to amend its answer to state explicitly the affirmative defenses of mutual mistake and impossibility, which Defendant contends are encompassed within its more general affirmative defense stated above.  (ECF No. 155 at 2.)  But Defendant has failed to show good cause for amending its answer at this stage of the case.  In its motion, Defendant argues that it "learned for the first time precisely how [Plaintiff] believes it breached the contracts at issue in this matter" when Plaintiff filed its motion for partial summary judgment.  (ECF No. 155 at 1.)  The Court has a difficult time understanding this argument because the complaint alleges that "[a]t no point has [Defendant] ever applied for or obtained it own [CD] to own or operate the Facility as a solid

waste site and facility as legally required." (ECF No. 102 at ¶ 41.) Moreover, as discussed above, amending the answer to add these affirmative defenses would be futile. Accordingly, the Court denies Defendant's motion to amend.

### C. Motion for Sanctions

Plaintiff has also filed a motion for sanctions, seeking to exclude two witnesses and an email that it contends Defendant was late to disclose, or, alternatively, an order granting it leave to conduct further discovery at Defendant's expense. To the extent the motion pertains to Plaintiff's statement of undisputed material fact ¶ 9, however, it is now moot. Further, it appears that the evidence and potential testimony implicate Defendant's liability only, not the amount of Plaintiff's damages. Therefore, given the Court's determination that Plaintiff is entitled to partial summary judgment on the issue of liability and in the interest of judicial efficiency, the Court denies this motion without prejudice at this time.

### IV. CONCLUSION

Accordingly, the Court GRANTS Plaintiff's motion for partial summary judgment (ECF No. 137), DENIES Defendant's motion to amend (ECF No. 155), DEEMS WITHDRAWN Defendant's motion to correct and supplement (ECF No. 169), and DENIES WITHOUT PREJUDICE Plaintiff's motion for sanctions (ECF No. 172).

DATED this 28th day of September, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge