IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 18-cv-01060-RM-KLM

LAMBLAND, INC. d/b/a A-1 Organics, Inc., a Colorado corporation,

    Plaintiff,

v.

HEARTLAND BIOGAS, LLC, a Denver limited liability company,

    Defendant.

___

# ORDER

___

Before the Court are Defendant's Motion to Exclude Damages Evidence (ECF No. 183) and Plaintiff's Motion in Limine (ECF No. 207). Both motions have been fully briefed (ECF Nos. 188, 192, 202, 220, 222) and are ripe for review. As set forth below, both motions are granted in part and denied in part.

## I.    LEGAL STANDARDS

### A.    Relevancy

"The threshold inquiry in any dispute over the admissibility of evidence is whether the evidence is relevant." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000). In assessing the relevance of proffered testimony, the Court considers whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. P. 401. This assessment depends on whether the proffered evidence has a sufficient logical

relationship to the issue at hand to aid the trier of fact. *Bitler*, 400 F.3d at 1234 ("Evidence appropriate for one purpose, therefore, may not be relevant for a different purpose, and it is the trial court's task to make this fitness determination."). Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusion the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Civ. P. 403. "The proponent bears the burden of establishing admissibility." *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1149 (10th Cir. 2009).

### B.  Expert Testimony

To be admissible, an expert's testimony must rest on a reliable foundation and be relevant to the task at hand. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019). The Court has wide latitude in how it conducts its gatekeeping function of admitting or excluding expert testimony. *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). In assessing the reliability of expert testimony, the Court first considers whether the expert is qualified to render an opinion and then whether the expert's opinion is reliable. *Bill Barrett Corp.*, 918 F.3d at 770. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "[A] trial court's focus should not be upon the precise conclusions reached by the

expert, but on the methodology employed in reaching those conclusions." *Bitler*, 400 F.3d at 1233.

II.     **BACKGROUND**

In this breach of contract case, the Court has already resolved the issue of liability in Plaintiff's favor. (*See* ECF No. 181.) After Plaintiff entered into a Lease and a Substrate Services Agreement with Defendant, Defendant breached the agreements by failing to obtain a certificate of designation ("CD") as required to operate its solid waste facility. The plan was for Plaintiff to operate a substrate digester processing system at the facility and to supply Defendant with substrate materials needed to generate biogas for a third party. The arrangement would have provided Plaintiff income from suppliers for accepting their substrates as well as marketing fees from Defendant from sales of the processed substrate materials. But months after operations began, Defendant shut down the facility and operation of the digester ceased. Plaintiff incurred diversion costs when it was not able to process substrates that were delivered. Pursuant to the parties' agreements, the diversion costs were reimbursed, at least in part, by Defendant. A jury trial on the total amount of Plaintiff's damages stemming from Defendant's breach of the agreements is set for November. Both parties filed motions seeking to limit the evidence that can be presented.

III.    **ANALYSIS**

    A.    **Defendant's Motion**

        1.    "Initial investment" and "operating loss" damages

Defendant first objects to the admission of testimony pertaining to Plaintiff's "initial investment" and "operating loss," arguing that these "rescission damages" are unavailable to

Plaintiff because it did not seek such damages in its Complaint. (ECF No. 183 at 9.) Plaintiff asserts that these constitute "reliance damages," not "rescission damages," and that it is entitled to plead expectation and reliance damages in the alternative, even though it cannot recover both.

"In general, contract law espouses three distinct, yet equally important, theories of damages to remedy a breach of contract: expectation damages, reliance damages, and restitution damages." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1026 (10th Cir. 2018) (quotation omitted). Because the main purpose of a contract remedy is to place the plaintiff in as good a position as it would have occupied had the defendant not breached the contract, expectation damages are the norm in an action for breach of contract. *Id.*; *see also Acoustic Mktg. Rsch., Inc. v. Technics, LLC*, 198 P.3d 96, 98 (Colo. 2008) (en banc) ("In a breach of contract action, the measure of damages is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred.").

Here, Plaintiff provides no explanation or argument as to why this breach of contract action falls outside of the norm such that the ordinary remedy of expectation damages should not be imposed. *See Spring Creek Expl. & Prod. Co., LLC,* 887 F.3d at 1026 ("When reliance damages are awarded in lieu of expectation damages, they are generally viewed as—from the plaintiff's perspective—a second-best option, selected only where expectations are difficult or impossible to prove."). Indeed, Plaintiff asserts elsewhere that it can prove its expectation damages to a reasonable certainty (ECF No. 188 at 16), and nowhere does Defendant refute this assertion.

Moreover, in its Response to Defendant's Motion, Plaintiff states that it is "not . . . seeking to recover rescission remedies" (ECF No. 188 at 8) and that it has "repeatedly confirmed

4

its intent to affirm the Agreements" (*id.* at 4). It is not disputed Defendant has paid some portion of Plaintiff's diversion costs as contemplated by the parties' agreements. Nor can it reasonably be debated that Plaintiff would not have incurred "initial investment damages" (i.e., investments Plaintiff needed to make to fulfill its performance obligations under the agreements) and "operating loss damages" (i.e., business losses incurred in the months the DPS was operational) even if Defendant had not breached the agreements. Under these circumstances, the Court finds that such evidence has limited probative value while at the same time it poses a significant danger of causing confusion of the issues and misleading the jury. Accordingly, the Court will grant Defendant's Motion with respect to precluding Plaintiff's expert from offering testimony about "initial investment" and "operating loss" damages.

2. "Lost income" and "lost marketing fees" damages

Defendant next objects to Plaintiff presenting testimony about "lost income" and "lost marketing fees," which Defendant calls "consequential damages." (ECF No. 183 at 12.) Defendant argues that evidence pertaining to these damages is precluded by the parties' agreements and that neither Plaintiff's expert, Mr. Wester, nor its president and chief financial officer, Travis Bahnsen, should be permitted to testify about these damages. The Court rejects the first argument and accepts the second argument with respect to Plaintiff's expert only.

a. *Effect of the agreements*

Defendant contends that the consequential damages Plaintiffs seek are barred by the following provision of the Substrate Services Agreement:

> *Consequential and Incidental Damages*. In no event will the Parties hereto . . . be liable to the other Party . . . for any consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or good will) in connection with the performance of this Agreement, whether or not liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, and even if such Party is advised of the likelihood of such damages; provided that the foregoing waiver shall not apply to indemnification obligations contained herein or liability arising from a Party's willful misconduct.

(ECF No. 183.1 at 13, § 10.4.) This section and the other three sections in part 10 of the agreement, which is entitled "Indemnification," expressly apply to indemnification situations.

Plaintiff contends that the broader remedies provisions of part 9, entitled "Defaults and Remedies," apply here. Section 9.2 provides, in pertinent part, as follows:

> *Remedies Generally*. Upon an Event of Default and while the Event of Default is continuing, the non-defaulting Party may do one or more of the following:
>
> . . .
>
> (b)    Recover from the defaulting Party any Losses incurred as a result of the Event of Default . . . ;
>
> . . .
>
> (e)    Take any other action permitted in law or in equity.

(*Id.* at 11-12, ¶ 9.2.) In addition, § 9.4 provides as follows:

> *No Exclusive Remedy*. No remedy in this Agreement for an Event of Default is intended to be exclusive and each remedy will be cumulative and in addition to every other remedy given under this Agreement or available at law or in equity. . . .

(*Id.* at 12, ¶ 9.4.)

Reading the Substrate Services Agreement as a whole, the Court finds Defendant's reliance on § 10.4 is misplaced in this context, where indemnification is not at issue. In assessing the meaning of a contract, courts must examine the entire agreement rather than

clauses or phrases in isolation. *See Level 3 Commmc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) ("Under Colorado law, contracts should be interpreted consistently with the well-established principles of contractual interpretation" (quotation omitted)). Had the parties intended for that section to limit liability in a dispute not involving indemnification, they would not have tucked it into the agreement under the "Indemnification" heading alongside the other indemnification provisions. Further, such a reading would also render superfluous the "Defaults and Remedies" part of the agreement. *See id.* (noting that "every relevant provision must be considered and given effect").

Defendant also cites § 16.02 of the Lease, a provision found in the "Indemnity" part of that agreement. Section 16.02 is inapt here for the additional reason that its limitation applies to damages arising from conduct that occurs at the facility. (*See* ECF No. 170-6 at 35, § 16.02 ("The Lessor Parties shall not be liable for losses of rent, business opportunities, profits or any other consequential damages that may result from the conduct of Lessor Parties' activities *on the Property*" (emphasis added)).) For present purposes, the Court finds that Defendant's failure to perform under the agreements, including its failure to obtain a valid CD, was not conduct that occurred at the facility.

Therefore, the Court discerns no basis in the parties' agreements for excluding evidence pertaining to these types of damages and denies Defendant's Motion to the extent it seeks to exclude such evidence.

b. *Mr. Wester's testimony*

Perhaps recognizing that the agreements might not preclude Plaintiff from recovering expectation damages, Defendant also argues that Plaintiff's expert should not be permitted to testify about "lost income" or "lost marketing fees." The Court agrees.

Mr. Wester's twenty-page report focuses on four categories of damages: initial investment, operating loss, past diversion, and present value of future diversion. (*See* ECF No. 184 at 9.) But the report also contains a suggestion that other expectation damages might be available to Plaintiff, even though Mr. Wester was not asked to assess such damages. (*See id.* (stating that "[w]hile we have not been asked to calculate these damages, alternative measures of [Plaintiff's] damages in this matter include expected 'benefit of the bargain damages'").) According to the report, Mr. Wester reviewed financial projections prepared by the parties that assessed Plaintiff's lost income at $6.1 million and its lost marketing fees at $5.4 million. But the inclusion of these amounts in the report does not show that Mr. Wester applied reliable principles or methods to the relevant facts. "The heart of expert testimony is the *foundation*." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). Unlike the methodology employed in assessing the other categories of damages in the report, the Court finds there are insufficient facts, data, and analysis related to these figures for them to be helpful to the jury as expert testimony. Accordingly, the Court will grant Defendant's Motion to the extent it seeks to disallow Mr. Wester from testifying about "lost income" or "lost marketing fees."

c. *Mr. Bahnsen's testimony*

Defendant's contention that Mr. Bahnsen may not testify about these damages stands on a different footing. As Plaintiff's president and chief financial officer, he was personally involved in making the financial projections reviewed by Mr. Wester as well as the underlying agreements in this case. Although not offered as an expert witness, the Court sees no reason at this stage why he cannot offer lay testimony about Plaintiff's expectation damages, including lost income and lost marketing fees. *See* Fed. R. Evid. 701; *see also LifeWise Master Funding*, 374 F.3d at 929-30 (noting that courts have found business owners' testimony admissible under Rule 701 where they "had sufficient personal knowledge of their respective businesses and of the factors on which they relied to estimate lost profits" as well as where they "offered valuations based on straightforward, common sense calculations"). Defendant has not shown that Mr. Bahnsen is distinguishable in any meaningful way from an accountant using basic arithmetic, personal experience, and no expert reports to calculate a coverage claim. *See Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013) (citing with approval cases allowing accountants to offer lay testimony while applying Texas law).

The Court rejects Defendant's assertion that Plaintiff failed to meet its disclosure obligations with respect to Mr. Bahnsen. First, because he is not offered as an expert, Plaintiff was not required to comply with the disclosure obligations applicable to expert witnesses. Second, the Final Pretrial Order states that Mr. Bahnsen will testify to Plaintiff's "damages caused by [Defendant's] breach of the contracts, including expectation damages." (ECF No. 165 at 22.) Defendant has not shown this is inadequate to satisfy the disclosure obligations

applicable to lay witnesses. *See* Fed. R. Civ. P. 26(a). Accordingly, the Court denies Defendant's Motion with respect to limiting Mr. Bahnsen's testimony at trial.

**B.     Plaintiff's Motion**

Plaintiff's Motion in Limine seeks to exclude evidence and argument that (1) its damages were caused by third parties such as the Weld County Board of County Commissioners ("BOCC") and the Colorado Department of Public Health and the Environment ("CDPHE"), and (2) Defendant is entitled to a setoff based on Plaintiff's rent obligations. The Court agrees that the first type of evidence should be excluded, and Plaintiff no longer objects to the second type being admitted.

1.     Causation Evidence

In its Order on partial summary judgment, the Court determined Defendant's breach of the agreements caused an unspecified amount of damages to Plaintiff. Plaintiff asks the Court to preclude Defendant from presenting evidence that the BOCC and the CDPHE caused some portion of its damages. If such evidence is not excluded, Defendant apparently intends to argue that even if it breached the agreements by failing to obtain a CD (which it still disputes for appellate purposes), that failure did not cause the facility to shut down. Rather, Defendant argues that "a second factor, completely separate from [its] breach of not having a CD, that caused the shutdown and hence [Plaintiff's] damages." (ECF No. 220 at 5.)

Plaintiff is entitled to expectation damages from Defendant for its failure to perform under the agreements. Although the Court ruled that Defendant breached the agreements by failing to obtain a CD, it is now clear that its failure to perform under the agreements encompasses additional conduct. For example, due to the shutdown (however caused),

10

Defendant was unable to accept Plaintiff's substrate materials, and the anticipated benefits of the agreements never materialized. Nothing is precluding Defendant from seeking recourse from a third party should it wish to do so. But that is not what this case is about. The Court finds there are at least three reasons to exclude Defendant's causation evidence pertaining to the BOCC and the CDPHE.

First, although the BOCC and the CDPHE were at one time designated as non-parties at fault, the Court previously granted the parties' joint motion asking that Defendant's Amended Designation be withdrawn with prejudice. (*See* ECF No. 101.) Allowing Defendant's causation evidence related to these entities would essentially permit Defendant to circumvent the Court's previous Order and reinsert these entities into this litigation at this stage, where the only remaining issue is the amount of Plaintiff's damages caused by Defendant's breach of the agreements.

Second, the purpose of the upcoming trial is to find a way to put Plaintiff in the position it would have been had Defendant not breached the agreements. There is no basis to conclude that any conduct of the BOCC and the CDPHE is directly relevant to that question. To the extent the conduct of these entities is indirectly relevant, the Court finds that the probative value of such evidence is substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay, and wasting time.

Third, if Plaintiff suffered damages as a result of conduct by the BOCC or the CDPHE, it is up to Plaintiff whether it wants to pursue a claim against either or both of them. The same goes for Defendant. But regardless of whether such claims exist or will ever be pursued, the Court finds they are not relevant to the expectation damages that are at issue in this breach of

contract case.

Therefore, the Court grants Plaintiffs' Motion with respect to disallowing causation evidence related to the BOCC and the CDPHE.

2. <u>Setoff for Rental Payments</u>

In its Motion, Plaintiff sought to preclude Defendant from presenting evidence that it is entitled to a setoff based on the amount of rent Plaintiff would have paid under the agreements, relying on the Court's determination that Plaintiff no longer had a duty to pay rent once Defendant breached the agreements. But in its Reply, Plaintiff concedes "that its expectation damages are properly reduced by the rent it never had to pay." (ECF No. 222 at 4.) Therefore, the Court discerns no basis for excluding evidence pertaining to Plaintiff's rent obligation and denies Plaintiff's Motion to the extent it seeks to preclude Defendant from presenting such evidence.

## IV. CONCLUSION

Therefore, Defendant's Motion (ECF No. 183) and Plaintiff's Motion (ECF No. 207) are each GRANTED IN PART and DENIED IN PART, as stated in this Order.

DATED this 15th day of July, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge